**Certiorari Granted, March 1, 2013, No. 34,006**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-037**

**Filing Date:  December 19, 2012**

**Docket No. 31,090**

**K. ROXYANNE JANET,**

      **Plaintiff-Appellant,**

**v.**

**ART J. MARSHALL and
ROBERT PADILLA,**

      **Defendants-Appellees,**

**and**

**BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF BERNALILLO,
HEATHER LOUGH, MELANEY MONTOYA,
RONALD C. TORRES, and TOMMY TRUJILLO,**

      **Defendants**.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge**

Bach & Garcia LLC
George Bach
Albuquerque, NM

for Appellant

Brown Law Firm
Joel M. Young
Kevin M. Brown
Albuquerque, NM

1

for Appellees

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**    This case presents us with a question of interpretation regarding the definition of "public employer" under the recently enacted Whistleblower Protection Act, NMSA 1978, §§ 10-16C-1 to -6 (2010) (WPA or the Act). Plaintiff JaNet filed a complaint against the Board of County Commissioners of Bernalillo County and several individual defendants alleging unlawful retaliation in violation of the Act. Two of the defendants, Defendants Marshall and Padilla, were employees of the Metropolitan Court of Bernalillo County (Metropolitan Court) at the relevant time.

**{2}**    In response to the suit, Defendants filed a motion for summary judgment. The district court granted the motion based on its decision that, as a matter of law, neither Appellee was a "public employer" as defined in the Act. We agree and affirm.

**I.    BACKGROUND**

**{3}**    For purposes of background, we provide a short summary of the case as it relates to Defendants. Our summary is based primarily on the information contained in Plaintiff's complaint and affidavit. In early 2009, Plaintiff was employed as a transport officer for the Bernalillo County Metropolitan Detention Center (MDC). During conversations with a fellow transport officer in January and March 2009, Plaintiff was told that her colleague's boyfriend was on probation but was not being drug-tested by his probation officer and had used drugs in front of the colleague's baby. Plaintiff first reported this information to Chief Probation Officer Jill Ingraham (Ingraham) in January 2009. Then, in March 2009, Plaintiff left a voicemail message for Ingraham about Plaintiff's continued concerns about the situation. Even though, as it turned out, the boyfriend was not on probation at the time of the report and therefore was not subject to drug-testing, Plaintiff's position is that she had a good faith basis for making her report.

**{4}**    After receiving the voicemail, Ingraham contacted Appellee Marshall—a program manager for Metropolitan Court—and forwarded him the email. Appellee Marshall forwarded Plaintiff's voicemail to her supervisor, who then forwarded it to officials at MDC, Plaintiff's employer. Appellee Marshall was concerned about an appearance of impropriety and that Plaintiff may have been using her position to access confidential or privileged information. In addition, Appellee Padilla—the programs division director in charge of the Background Investigations Division at Metropolitan Court—contacted Plaintiff's supervisor about the voicemail. Appellee Padilla served as the Metropolitan Court's liaison between the court and the MDC.

**{5}**    Plaintiff's supervisor told her that Marshall was angry because she had reported the

2

probation officer and that Marshall wanted her fired. On March 5, the supervisor issued a memorandum of employee misconduct regarding Plaintiff and issued a letter of investigation into the voicemail left by Plaintiff. Less than a month later, Plaintiff was fired by a representative of the Bernalillo County Board of Commissioners. Plaintiff contends that her firing was based on the retaliatory actions of Defendants.

## II. DISCUSSION

**{6}** As we explained, the district court granted summary judgment in favor of Defendants concluding that they did not qualify as "public employers" under the WPA. We observe that Plaintiff was an employee of Bernalillo County at the relevant times while Defendants were employees of the Metropolitan Court, an entity of the judicial branch of state government. The court did not address the question of the employment relationship between Plaintiff and Defendants. Nor do we. Our analysis is limited to the sole question of whether Defendants are public employers as contemplated by the WPA.

### A. Standard of Review

**{7}** The issue before us was decided on a motion for summary judgment. "We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We review these legal questions de novo." *Id.*

**{8}** The question we consider is one of statutory interpretation. "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. We are not bound by the legal conclusions of the district court. *See Primetime Hospitality, Inc. v. City of Albuquerque*, 2009-NMSC-011, ¶ 10, 146 N.M. 1, 206 P.3d 112 ("We review these questions of law de novo, without deference to the district court's legal conclusions.").

### B. Definition of Public Employer

**{9}** When construing a statute, "our guiding principle is to determine and give effect to legislative intent." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. "Legislative intent is determined primarily from the language of the statute, and from the legislative purpose to be achieved[.]" *State v. Andrews*, 1997-NMCA-017, ¶ 5, 123 N.M. 95, 934 P.2d 289 (citation omitted). "In ascertaining the Legislature's intent, we are aided by classic canons of statutory construction. We look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *N.M.*

*Indus. Energy Consumers*, 2007-NMSC-053, ¶ 20. (citation omitted). We look at the plain meaning of the words "used in the context of the statutory text as a whole." *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73.

**{10}** We begin with the language of the WPA. The Act prohibits a public employer from taking retaliatory action against a public employee and lists the protected conduct. *See* § 10-16C-3. A "public employee" is "a person who works for or contracts with a public employer[.]" Section 10-16C-2(B). The statute defines "public employer" as:

> (1)     any department, agency, office, institution, board, commission, committee, branch or district of state government;

> (2)     any political subdivision of the state, created under either general or special act, that receives or expends public money from whatever source derived;

> (3)     any entity or instrumentality of the state specifically provided for by law; and

> (4)     every office or officer of any entity listed in Paragraphs (1) through (3) of this subsection[.]

Section 10-16C-2©.

**{11}** In its order on summary judgment, the district court wrestled with the definition of "public employer" and concluded that Defendants "do not fit within the definition of a public employer under the [WPA]." The court explained its decision as follows:

> My ruling is that I don't believe that Marshall and Padilla fit within the definition of public employer—I'm trying to limit my ruling to the statute before me—and that while there are other definitions of public officer, public officer is different potentially from public employer, which is defined, and that to conclude that everyone who is hired is a public officer for purposes of the [WPA] is, to me, potentially too broad.

The language in Section 10-16C-2(C) includes entities as well as any officer of any of those entities. Defendants themselves are not entities. Their employer, Metropolitan Court, is part of the judicial branch of state government, and those working in Metropolitan Court are subject to statutes created by the Legislature. *See generally* NMSA 1978, §§ 34-8A-1 to -15 (1979, as amended through 2010). "Personnel of the [M]etropolitan [C]ourt are subject to all laws and regulations applicable to state officers and agencies and state officers and employees, except where otherwise specifically provided by law." Section 34-8A-8(B). The judicial branch is one of the entities enumerated in the WPA. Accordingly, the question before us is whether Defendants are *officers* of the judicial branch as contemplated by the

4

WPA. The statute itself does not define "officer," so we look to case law and other statutes for guidance.

**{12}** The term "officer" has been considered by our Supreme Court in a number of cases. *See State ex rel. Gibson v. Fernandez*, 40 N.M. 288, 290, 58 P.2d 1197, 1198 (1936) (deciding that quo warranto is not the proper proceeding to test the right to hold a position in the public service which is not a "public office, civil[,] or military" (internal quotation marks and citation omitted)); *State v. Quinn*, 35 N.M. 62, 67, 290 P. 786, 788 (1930) (interpreting the predecessor statute to NMSA 1978, Section 30-24-1 (1963), and concluding that the statute did not apply to the defendant because he was not an officer). In *Pollack v. Montoya*, 55 N.M. 390, 393-94, 234 P.2d 336, 338-39 (1951), our Supreme Court discussed a five-factor test to determine who qualifies as a public officer. However, in a more recent case, *Lacy v. Silva*, 84 N.M. 43, 499 P.2d 361 (Ct. App. 1972), we observed that New Mexico courts have not expressly adopted the five-factor test mentioned in *Pollack* and concluded that only one factor need be considered: whether the officer posseses "a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public." *Lacy*, 84 N.M. at 45, 499 P.2d at 363; *see* 63C Am. Jur. 2d *Public Officers and Employees* § 9 (2012) (citing among the six characteristics of a public officer "the delegation to and exercise of some portion of governmental sovereign power, with supervisory and discretionary authority" (footnotes omitted)). The definition of sovereignty includes the concepts of autonomy and independence. *Lacy*, 84 N.M. at 45, 499 P.2d at 363. "The question then is whether supreme power or freedom from external control has been vested in the [holder of the position]." *Id.*; *accord Walck v. City of Albuquerque*, 117 N.M. 651, 654, 875 P.2d 407, 410 (Ct. App. 1994).

**{13}** In *Lacy*, we considered whether the district director for the state Bureau of Revenue, who was appointed by and worked under the commissioner of the bureau, was a public officer. We noted that "although authority and responsibility had been delegated to" the district director, his decisions were subject to being "countermanded" by the Commissioner of the Bureau of Revenue. 84 N.M. at 45, 499 P.2d at 363. We held that the district director was not a public officer because "the district director [was] not free from control by the Commissioner, [was] not autonomous[,] and [was] not independent." *Id.* By contrast, in *Pollack* our Supreme Court ruled that the chief of Division of Liquor Control for the state *was* a public officer, noting that the position was specifically created by statute. 55 N.M. at 395, 234 P.2d at 339. The Court concluded that "when this office with powers and duties of state[-]wide scope has been created by law and an incumbent is lawfully appointed to and qualifies to fill the same, such person is a state officer." *Id.*

**{14}** We look to the record to evaluate the positions held by Defendants. Together with their motion for summary judgment, Defendants filed affidavits about their jobs and employment duties together with documents containing their job descriptions, the organizational structure of the Metropolitan Court, and the organizational structure of the probation supervision division office. The information demonstrates that Marshall, as program manager for Metropolitan Court, supervised probation officers, and Padilla oversaw

5

the Background Investigations Division and was the liaison between the court and the MDC. Both were heads of departments or offices within the judicial branch of state government, with supervisory duties and the power to direct the work environment of the employees they supervised. However, Defendants' job descriptions stated that they were to work "[u]nder administrative direction[,]" holding positions that are at least one layer below that of any officer or officers for Metropolitan Court in Bernalillo County. They thus were not autonomous and independent in their duties and decision making and were not free from the ultimate decision-making authority of their superiors. In addition, their positions are not specifically created by statute. And there is no evidence that "supreme power or freedom from external control has been vested in" them. *Lacy*, 84 N.M. at 45, 499 P.2d at 363. Accordingly, we conclude that Defendants are more like the district director in *Lacy* than the chief of Division of Liquor Control in *Pollack*.

{15}   Plaintiff relies on another case, *New Mexico Regulation & Licensing Department v. Lujan*, 1999-NMCA-059, ¶ 12, 127 N.M. 233, 979 P.2d 744, for the proposition that the term "employer" incorporates within its meaning "the hiring and firing of . . . employees." We agree that, according to the affidavits, Defendants hold supervisory positions that involve the hiring, firing, and evaluation of employees. *Lujan*, however, is not on point. In *Lujan*, we were interpreting the State Personnel Act, which defines "employer" more broadly than the WPA as "any authority having power to fill positions[] in an agency[.]" NMSA 1978, § 10-9-3(E) (1961). More distinctly, *Lujan* dealt solely with the question of whether the worker who had been dismissed should be considered an employee of the state Regulation and Licensing Department or of the state Real Estate Commission. 1999-NMCA-059, ¶ 1. Unlike the case before us, *Lujan* faced the issue of which *entity* qualified as an "employer" and does not help us resolve the issue of whether an *individual* within an entity qualifies as a "public employer" under the WPA.

{16}   We next look to New Mexico statutes for guidance. Plaintiff points to companion statutes governing the conduct of public officers and employees—the Governmental Conduct Act (GCA), NMSA 1978, §§ 10-16-1 to -18 (1967, as amended through 2011), and Financial Disclosures Act (FDA), NMSA 1978, §§ 10-16A-1 to -8 (1993, as amended through 1997). She argues that in both of these statutes the term "public officer" is more broadly defined and invites us to read the WPA in concert with the language and intent of those statutes. *See State v. Davis*, 2003-NMSC-022, ¶ 12, 134 N.M. 172, 74 P.3d 1064 ("All of the provisions of a statute, together with other statutes in pari materia, must be read together to ascertain legislative intent."). Although we acknowledge that the two companion statutes serve a purpose similar to that of the WPA, there are language distinctions that preclude our adoption of Plaintiff's argument.

{17}   First, we observe that both the GCA and the FDA prescribe one course of conduct for all those who work for the state, from low-ranking employees to supervisors to heads of departments and agencies. *See* §§ 10-16-1 to -18; §§ 10-16A-1 to -8. The GCA applies ethical rules across the board to any "legislator or public officer or employee," Section 10-16-3(A), while the FDA regulates the required financial disclosures of "candidates and

6

public officers and employees[.]" Section 10-16A-3. By contrast, the WPA is divided into two parts: it protects certain actions of "employees" and prohibits the activities of "employer[s]" who retaliate against the employees. Section 10-16C-3. Thus, it differs in basic strategy from the GCA and the FDA.

**{18}** Second, neither the GCA nor the FDA includes a definition of "public officer" separate from that of "employee"; rather both statutes provide an umbrella definition of "public officer or employee," lumping together all levels of personnel. The GCA defines a "public officer or employee" as "any elected or appointed official or employee of a state agency or local government agency who receives compensation in the form of salary or is eligible for per diem or mileage but excludes legislators[.]" Section 10-16-2(I). Similarly, the FDA defines "public officer or employee" as "any person who has been elected to, appointed to[,] or hired for any state office and who receives compensation in the form of salary or is eligible for per diem or mileage, but excludes legislators and judges." Section 10-16A-2(F). By combining the definitions of "public officer" and "employee" into one definition, the GCA and FDA make no distinction between the two and do not directly address who is an officer. For instance, under the FDA, an officer could include anyone who has been "elected to, appointed to[,] or hired," or it could include only one who has been elected and appointed, with "hired" applying only to employees. By contrast, the WPA has separate definitions for "public employee" and "public employer," and the definitional term "officer" undoubtedly applies only to employers, not employees. Section 10-16C-2(B), ©.

**{19}** In sum, the GCA and FDA have broader, more uniform application than does the WPA, and they offer definitions of "public officer" that are imprecise and structurally different in content. Thus, the WPA does not fit well with the companion statutes when it comes to interpreting the definition of "public employer" or "officer" under the Act.

**{20}** We conclude that Defendants are not officers as contemplated by the definition of "public employee" under the WPA. Our analysis is guided by the principle that the Legislature is fully aware of both statutory and common law when crafting statutes. *See Attorney Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453 (presuming that "the [L]egislature act[s] with full knowledge of relevant statutory and common law" (internal quotation marks and citation omitted)). "Courts normally assume that the Legislature is informed as to existing statutory and common law when it acts." *Galassi v. Galassi*, 2009-NMCA-026, ¶ 15, 145 N.M. 630, 203 P.3d 161; *see also Benavidez v. Sierra Blanca Motors*, 1996-NMSC-045, 122 N.M. 209, 213, 922 P.2d 1205, 1209 ("We presume that the Legislature is well informed regarding existing statutory and common law and does not intend to enact a nullity."); *V.P. Clarence Co. v. Colgate*, 115 N.M. 471, 474, 853 P.2d 722, 725 (1993) (stating that "the [L]egislature is presumed to act with knowledge of relevant case law"); *State v. Trujillo*, 1999-NMCA-003, ¶ 12, 126 N.M. 603, 973 P.2d 855 ("We presume that the Legislature is aware of reported New Mexico court decisions when it enacts legislation.").

**{21}** Plaintiff argues and we agree that whistleblower laws in general "are meant to

7

encourage employees to report illegal practices without fear of reprisal by their employers." *Haley v. Retsinas*, 138 F.3d 1245, 1250 (8th Cir. 1998) ("These statutes generally use broad language and cover a variety of whistleblowing activities. Accordingly, when the meaning of the statute is unclear from its text, courts tend to construe it broadly, in favor of protecting the whistleblower."); *see Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010); *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 342-43 (4th Cir. 2010); *Day v. Staples, Inc.*, 555 F.3d 42, 52 (1st Cir. 2009); *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 481 (7th Cir. 2004). Plaintiff urges us to construe the Act broadly to effect its purpose and contends that a liberal reading of the statute would include mid-level supervisors as "public employer[s]." When interpreting both state and federal whistleblowing statutes, other jurisdictions are split over the question of whether mid-level supervisors who are agents of the employing entity are individually liable for retaliatory action taken against an employee. For example, in Oregon the term "[p]ublic employer" includes "[a]ny person authorized to act on behalf of the state, or any agency of or political subdivision in the state, with respect to control, management[,] or supervision of any employee[.]" Or. Rev. Stat. § 659A.200(3)(b) (2012). And Pennsylvania's whistleblower statute defines a public employer as "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." 43 Pa. Cons. Stat. Ann. § 1422 (1986). By contrast, Minnesota does not hold supervisors liable. Although the state defines an employer as "any person having one or more employees in Minnesota and includes the state and any political subdivision of the state," Minn. Stat. Ann. § 181.931, subd. 3 (1987), the Minnesota Court of Appeals concluded that even though the statute included the term "person," "the Minnesota whistleblower act does not impose liability on individual supervisors." *Obst v. Microtron, Inc.*, 588 N.W.2d 550, 554 (Minn. Ct. App. 1999), *aff'd*, 614 N.W.2d 196 (Minn. 2000). The Minnesota court, acknowledging most states' reliance on federal law in this area, also noted that a "growing consensus exists among the [federal] courts of appeals that employees cannot be held individually liable" under federal law. *Id.* at 553-54; *see Lloyd v. Cnty. of Los Angeles*, 90 Cal. Rptr. 3d 872, 880 (Ct. App. 2009) (concluding that a "cause of action for wrongful termination, or a claim of retaliation, lies only against the employer, not against the supervisor through whom the employer commits the tort"); *Bennett v. City of Holyoke*, 230 F. Supp. 2d 207, 221 (D. Mass. 2002) ("The [Massachusetts] Whistleblower statute permits only an 'employer' to be sued, not individual supervisors."), *aff'd*, 362 F.3d 1 (1st Cir. 2004); *Tex. Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 143 (Tex. App. 1993) ("The Whistleblower Act seeks to protect the individual employee against the collective acts of the agency, the bureaucracy, the institution, the system that retaliates, and does not seek to protect the employee solely against the acts of an individual supervisor.").

**{22}** Relieving Defendants of liability in this case still leaves Plaintiff with a cause of action, although not against Defendants individually. We conclude as a matter of law that Defendants are not "public employers" for purposes of the WPA and that the district court's grant of summary judgment was proper.

**III.  CONCLUSION**

8

**{23}** We share the Dissent's concern that our Opinion absolves of liability supervisors who are not officers. However, the determination of who exactly is to be liable is made by the Legislature as set out in statute, and here the Legislature declined to extend liability to all employees but rather confined liability to an "office or officer." Section 10-16C-2(B)(4). We cannot extend the range of liability by reading into a statute language that is not there, especially when the statute makes sense as written. *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611; *Town & Country Food Stores, Inc. v. N.M. Regulation & Licensing Dep't*, 2012-NMCA-046, ¶ 9, 277 P.3d 490. Consequently, we leave it to the Legislature to revisit the statute's definitions and, if necessary, clarify its intent as to who should be subject to liability.

**{24}** For the foregoing reasons we affirm the district court's grant of summary judgment in favor of Appellees.

**{25}** **IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**I CONCUR:**

_____

**J. MILES HANISEE, Judge**

**CYNTHIA A. FRY, Judge, dissenting**

**FRY, Judge (dissenting).**

**{26}** This case presents the first opportunity for any New Mexico appellate court to address the WPA, which was enacted in 2010. Because no appellate court has previously addressed this legislation, our first responsibility is to determine the Legislature's overarching purpose in enacting it. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) (explaining that "it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute"). In my view, the Majority has overlooked this touchstone of statutory interpretation and engaged in an overly technical analysis of one portion of the WPA's definition section. In the process, the Majority does not mention the obviously remedial purpose of the WPA as a whole. I respectfully dissent because if we consider the WPA in light of its purpose, Defendants Marshall and Padilla are "public employers" potentially subject to liability for their allegedly retaliatory acts against Plaintiff.

**{27}** The WPA is a succinct statute whose purpose is apparent. It provides that "[a] public employer shall not take any retaliatory action against a public employee" for certain "whistleblower"-type conduct the employee engages in. Section 10-16C-3. It further

9

provides that a public employer who violates the WPA shall be liable to the public employee for actual and special damages, reinstatement, double back pay with interest, costs and attorney fees. Section 10-16C-4(A). Given these provisions, it is clear that the Legislature intended to encourage and protect employees who report misconduct and to deter misconduct that might give rise to whistleblowing.

**{28}** It should be with this underlying purpose in mind that we consider the definition of "public employer" in order to determine whether Plaintiff appropriately asserted claims against Defendants Marshall and Padilla. Section 10-16C-2(C) lists four definitions for the term "public employer." The first three definitions exhaustively include every public entity that conceivably has employees. *See* § 10-16C-2(C)(1) - (3). It is the fourth category we are concerned with, which is the only definition that references an individual rather than an entity. It provides that a "public employer" includes "every office or officer of any entity" listed in the previous sections. Section 10-16C-2(C)(4).

**{29}** In determining what individuals the Legislature intended to target through its use of the term "officer," we should consider the circumstances likely to give rise to a claim under the WPA. The present case provides an example. Assuming Plaintiff can prove the allegations of her complaint, she reported what she believed in good faith to be misconduct by a probation officer. Defendants Marshall and Padilla complained to Plaintiff's immediate supervisor about Plaintiff's report of misconduct, and Marshall told the supervisor that he wanted Plaintiff to be terminated. As a result, the board of county commissioners ultimately terminated Plaintiff.

**{30}** These events, if proved, constitute retaliation prohibited by the WPA. Yet, under the Majority's analysis, Defendants Marshall and Padilla—the instigators of the retaliatory conduct—cannot be held liable. Under the Majority's analysis, the only individuals employed by the Metropolitan Court who could possibly be held liable for retaliatory conduct are those who have been delegated "a portion of the sovereign power of government." Majority Opinion, ¶ 12 (quoting *Lacy*, 84 N.M. at 45, 499 P.2d at 363). In reality, given the fact that a mere handful of the people who work at Metropolitan Court have been delegated sovereign power, it is more likely that retaliatory conduct would come from someone farther down the chain of command. In such cases, the vindictive individuals who actually retaliate would be immune.

**{31}** This cannot be what the Legislature intended in enacting the WPA. Although the retaliatory *entities* can certainly be held liable, as noted by the Majority, holding entities liable does little to deter the individual vindictive conduct that gives rise to retaliatory termination. In addition, holding only the entities liable certainly does not protect employees from such vindictive individuals and it would likely discourage employees from reporting government misconduct. Indeed, if a plaintiff proves WPA claims against an entity defendant and is reinstated, nothing would deter the individuals who initiated the retaliation from continuing to engage in vindictive conduct.

10

**{32}** Thus, we should consider the term "officer" in the context of the protective and deterrent purposes underlying the WPA. *See Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 31, 142 N.M. 437, 166 P.3d 1091 (explaining that remedial statutes should be interpreted liberally). The Majority chooses not to take this approach and instead relies on case law interpreting "state officer" as that term is used in a venue statute. *See Lacy*, 84 N.M. at 44, 499 P.2d at 362. This reliance on the venue statute for guidance seems inapposite because a survey of New Mexico statutes reveals several examples of contrary definitions that might be utilized to interpret "public employer" or "officer" in a vacuum rather than in the context of the WPA. For instance, the definition of "public officer" in the Public Records Recovery Act expressly includes mere employees. NMSA 1978, § 14-5-2(A) (1973) (defining "public officer" as "any officer or employee of the legislative, executive or judicial departments of the state or any of its agencies, and any officer or employee of any of the political subdivisions of the state, who is the official custodian of any public record or class of public records"). And the Metropolitan Redevelopment Code defines "public officer" as "any person who is in charge of any department or branch of government of the municipality." NMSA 1978, § 3-60A-4(U) (2000).

**{33}** Obviously, the Public Records Recovery Act and the Metropolitan Redevelopment Code have nothing to do with the WPA, but neither does the venue statute upon which *Lacy* and the Majority rely. We should not limit our focus to the bare words "public employer" and "officer" such that we simply seek similar words in completely dissimilar contexts at the expense of legislative intent. *See Bishop v. Evangilical Good Samaritan Soc.*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361 (stating that "[w]e must also consider the practical implications and the legislative purpose of the statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute"). Because I believe the Legislature intended to impose liability on individuals such as Defendants Marshall and Padilla if they are found to have engaged in retaliatory conduct, I respectfully dissent.

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for *JaNet v. Marshall*, No. 31,090**

**APPEAL AND ERROR**
Remand
Standard of Review

**CIVIL PROCEDURE**
Summary Judgment

**EMPLOYMENT LAW**
Termination of Employment

**GOVERNMENT**
Officers
Public Employees

**MISCELLANEOUS STATUTES**
Whistleblower Protection Act

**STATUTES**
Interpretation
Legislative Intent