This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40997**

**DANIEL PARSONS,**

      Plaintiff-Appellant,

v.

**VILLAGE OF CORRALES,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**James A. Noel, District Court Judge**

Grover Law, LLC
Thomas R. Grover
Albuquerque, NM

for Appellant

Long, Komer & Associates, P.A.
Gabriela M. Delgadillo
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Plaintiff Daniel Parsons sued his former employer, the Village of Corrales (Defendant or the Village), under the New Mexico Whistleblower Protection Act (NMWPA), NMSA 1978, §§ 10-16C-1 to -6 (2010). Plaintiff alleged that Defendant took retaliatory action against him, culminating in the termination of his employment as a police officer, because he reported to Defendant various forms of misconduct by a Corrales Police Department (CPD or the Department) lieutenant and the chief of police (collectively, the Officers). Defendant's motion for summary judgment argued that the

NMWPA does not protect Plaintiff's communications to Defendant and alternatively, that Plaintiff's termination and other disciplinary actions were caused by Plaintiff's misconduct and not by the alleged whistleblowing. *See* § 10-16C-3; § 10-16C-4(B). The district court granted Defendant's summary judgment motion. On appeal, we agree with Plaintiff that genuine issues of material fact preclude summary judgment. As a result, we reverse and remand for further proceedings.

**DISCUSSION**

**{2}**    Because this is a memorandum opinion, we discuss the facts and allegations only to the extent necessary to explain our analysis. We review orders granting summary judgment de novo. *See Lerma v. State* (*Lerma II*), ___-NMSC-___, ¶ 20, ___P.3d ___ (S-1-SC-40126, May 8, 2025). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Janet v. Marshall*, 2013-NMCA-037, ¶ 7, 296 P.3d 1253 (internal quotation marks and citation omitted); *see* Rule 1-056(C) NMRA. In reviewing a summary judgment order, we "consider the whole record for evidence that places a material fact at issue." *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65. Although "[w]e view the pleadings, affidavits, and depositions presented for and against a motion for summary judgment in a light most favorable to the nonmoving party," *Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 12, 135 N.M. 423, 89 P.3d 672, it remains "the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred," *Premier Tr. of Nev. Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. We briefly review the purpose of the NMWPA as well as its relevant provisions before turning to Plaintiff's arguments on appeal.

**{3}**    The NMWPA as a whole is intended "to promote transparent government and the rule of law." *Lerma II*, ___-NMSC-___, ¶ 24 (internal quotation marks and citation omitted). "Its provisions are simple." *Flores v. Herrera*, 2016-NMSC-033, ¶ 9, 384 P.3d 1070; *see also Janet*, 2013-NMCA-037, ¶ 27 (Fry, J., dissenting) (describing the NMWPA as "a succinct statute whose purpose is apparent"). Section 10-16C-3 "prohibits a public employer from taking retaliatory action against a public employee and lists the protected conduct." *Janet*, 2013-NMCA-037, ¶ 10. Section 10-16C-4(A) creates a cause of action for a public employee to enforce the statute's prohibition. And Section 10-16C-4(B), in relevant part, allows a public employer to assert the affirmative defense "that the action taken . . . was due to the employee's misconduct . . . or other legitimate business purpose unrelated to conduct prohibited pursuant to the [NMWPA] and that retaliatory action was not a motivating factor."

**{4}**    We address Plaintiff's contentions on appeal within the framework of the arguments that Defendant made to the district court in the motion for summary judgment—that (1) the NMWPA does not protect Plaintiff's conduct because he did not engage in protected conduct; and (2) no evidence established that any report made by Plaintiff, rather than his misconduct, caused his termination. The district court did not specify the grounds for granting summary judgment. *See* Rule 1-056(C) ("If alternative

grounds for summary judgment have been presented to the court, the order granting or denying the motion for summary judgment shall specify the grounds upon which the order is based."). As a result, Plaintiff challenges both grounds on appeal, and we consider each of them in turn. Because Plaintiff does not contest that Defendant made a prima facie case for summary judgment, we begin with the question of whether Plaintiff met the burden on summary judgment to come forth with evidence to establish that his communications to Defendant are protected by the NMWPA. *See Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 7, 122 N.M. 537, 928 P.2d 263 (explaining that after the movant makes a prima facie case to support summary judgment, the party opposing summary judgment "must come forward and establish with admissible evidence that a genuine issue of fact exists").

## I.      A Genuine Issue of Material Fact Exists as to Whether Plaintiff's Communications to Defendant Are Protected by the NMWPA

**{5}** Defendant argued in the district court, and continues to maintain on appeal, that "Plaintiff did not engage in a 'protected disclosure' as that term is defined in the [NM]WPA." We note at the outset that "protected disclosure" is not among the terms included in the definitional section of the statute. *See* § 10-16C-2 (providing statutory definitions of "good faith," "public employee," "public employer," "retaliatory action," and "unlawful or improper act"). Instead, Section 10-16C-3(A) protects a public employee who, in relevant part, "communicates to the public employer . . . about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." In addition, "only communications that benefit the public are protected under the NMWPA." *Lerma II*, ___-NMSC-___, ¶ 3 (omission, alterations, internal quotation marks, and citation omitted). Defendant continues to contend that (1) Plaintiff's deposition testimony established that he did not have a good faith belief that anything he reported was illegal or improper, as those terms are defined in the NMWPA, because he agreed in his deposition the disclosures related to disagreements with management decisions; and (2) Plaintiff's disclosures do not satisfy the public benefit requirement because they are just personnel grievances that benefit him. We disagree and conclude that the evidence in the record, viewed in the light most favorable to Plaintiff, would allow a reasonable jury to find that one or more of the communications at issue was a protected disclosure. *See* Rule 1-056(C) (allowing for summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *see also* UJI 13-2321 NMRA (establishing as an element of a NMWPA claim that the plaintiff "engaged in an activity that is protected by the" NMWPA); *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 25, 335 P.3d 1243 (concluding that questions of material fact precluded summary judgment for the defendant because a reasonable jury could find in favor of the plaintiff).

## A.      The Requirement That Plaintiff Report an Unlawful or Improper Act in Good Faith

**{6}** Defendant argues that Plaintiff cannot establish that he believed in good faith that he was reporting "unlawful or improper" acts. Section 10-16C-2(E) defines an "unlawful or improper act" as

a practice, procedure, action or failure to act on the part of a public employer that:

> (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;
>
> (2) constitutes malfeasance in public office; or
>
> (3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

Borrowing language from *Wills v. Board of Regents of University of New Mexico*, 2015-NMCA-105, ¶ 20, 357 P.3d 453, Defendant argues that Plaintiff's deposition testimony "conclusively establishes that he did not believe in 'good faith' that the acts he was communicating about constituted improper or unlawful acts" because "he testified the opposite: that the communications he made were about personal disagreements with managerial decisions and not unlawful acts." Considered in context, however, the *Wills* language does not support Defendant's position.

**{7}** In *Wills*, the plaintiff filed a NMWPA claim based on his employer's "failure to pay him according to the terms of the original employment contract." *Id.* ¶ 19. Relying on a federal circuit court case, *Riley v. Dep't of Homeland Sec.*, 315 F. App'x 267 (Fed. Cir. 2009), the *Wills* Court stated that "'personal disagreements with *legitimate* managerial decisions' do not demonstrate abuse of authority or 'any other kind of activity that could be considered a whistleblowing disclosure.'" 2015-NMCA-105, ¶ 20 (emphasis added) (quoting *Riley*, 315 F. App'x at 270). Defendant relies on the "legitimate managerial decisions" language from *Wills*, but as we explain, Plaintiff's testimony does not support Defendant's singular assertion that the communications were only about personal disagreements with legitimate managerial decisions.

**{8}** At his deposition, Plaintiff testified that (1) some of his communications to Defendant were about his disagreements with the Officers' decisions about which he was not aware of all the facts; and (2) some of his communications to Defendant were about conduct that was not illegal. The question of whether the Officers' decisions were legitimate was never raised during Plaintiff's deposition. Instead, Plaintiff testified that some—but not all—of his communications to Defendant were about his disagreements with the Officers' decisions. In particular, Plaintiff did not testify that his communication to Defendant regarding the lieutenant making inappropriate statements of a sexual nature to female employees within earshot of the chief was about Plaintiff's disagreement with the Officers' decisions. Plaintiff's disagreements were personal only in the sense that he held the opinions that formed the basis for the disagreements. In other instances, Plaintiff disagreed with a decision or a managerial decision but that decision was not made by a manager or supervisor in relation to *him*. These

disagreements are distinct from the disagreements with legitimate managerial decisions that affected only the personal interests of the plaintiffs in *Wills* and *Riley*. *See Wills*, 2015-NMCA-105, ¶¶ 20-21 (explaining that federal law distinguishes "'whistleblowing' that benefits the public by exposing unlawful and improper actions by government employees from communications regarding personal personnel grievances that primarily benefit the individual employee"); *Riley*, 315 F. App'x at 270 (considering the plaintiff's "personal disagreements with legitimate managerial decisions such as where to send him on assignments and terminating his employment based on problems with his travel charge card").

**{9}** To establish that the challenged decisions constituted "unlawful or improper act[s]," Plaintiff relied primarily on his own affidavit and attached exhibits. *See* § 10-16C-3(A). The affidavit asserted that Plaintiff had communicated to Defendant "concerns about improper if not unlawful conduct," involving "law enforcement operations and law enforcement officers, including safety"; and provided a list of nine topics that were discussed in the meetings with Defendant. The affidavit is not necessarily inconsistent with Plaintiff's deposition testimony.[1] A reasonable jury could conclude that Plaintiff personally disagreed with the Officers' decisions and that he also believed in good faith[2] that the Officers violated the law, abused their authority, grossly mismanaged the CPD, or created a substantial and specific danger to the public. *See* § 10-16C-2(E) (defining "unlawful or improper act").

**{10}** Defendant also suggests that Plaintiff's communications to Defendant cannot be protected by the NMWPA because Plaintiff testified that some of his communications were not about unlawful acts. Our review of Plaintiff's deposition testimony shows that though he conceded that much of the reported conduct was not unlawful, his concessions did not encompass all of the reported conduct. Specifically, Plaintiff reported conduct relating to operation of police vehicles, the handling of a domestic violence incident, and a potentially unlawful search. He maintained in his deposition that this conduct was unlawful. Defendant's focus on unlawful conduct also omits a key component of Section 10-16C-3(A) and Section 10-16C-2(E)(3)—protection against retaliation for reporting "improper act[s]" as well as unlawful ones. Plaintiff's testimony that certain conduct he reported was not unlawful is therefore not dispositive.

**{11}** In sum, viewing the evidence in the light most favorable to Plaintiff, we hold that Plaintiff's affidavit and deposition testimony create a genuine issue of material fact as to whether he communicated to Defendant information about conduct believing in good faith that the conduct was unlawful or improper. We next consider whether summary

---

[1]Defendant's motion to strike Plaintiff's affidavit as a "sham" was denied by the district court.
[2]Defendant assumes, and Plaintiff does not argue to the contrary, that the good faith belief requirement has a subjective component. We assume, but do not decide, that the statutory language establishes a subjective requirement that the plaintiff actually believe the act was unlawful or improper in addition to an objective requirement that a plaintiff's belief was an objectively reasonable one and therefore was held in good faith. See § 10-16C-2(A) (explaining that "'good faith' means that a reasonable basis exists in fact as evidenced by the facts available to the public employee").

judgment may have been appropriate based on Defendant's argument that Plaintiff's communications to Defendant were not made to benefit the public.

## B.      The Public Benefit Requirement

**{12}**     Defendant asserted in its summary judgment motion, and continues to argue on appeal, that Plaintiff's communications cannot be protected by the NMWPA because "the communications did not benefit the public, but were primarily to advance his personal employment interests." Our Supreme Court has rejected the notion that the NMWPA excludes from its protections disclosures that convey both a private and a public benefit. *See Lerma II*, ___-NMSC-___, ¶ 36. Specifically, "a public employee's disclosure of illegality or wrongdoing qualifies for protected whistleblower status, if otherwise eligible, so long as the disclosure confers a benefit on the public, irrespective of which benefit—public or personal—may be said to predominate." *Id.* As a result, Plaintiff's affidavit and deposition testimony, both of which include descriptions of the information he communicated to Defendant, create a genuine issue of material fact as to whether his communications involve a matter of public benefit. *See Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 10, 139 N.M. 12, 127 P.3d 548 (hinging the propriety of summary judgment on whether the nonmovant "sufficiently presented evidence to the district court to establish genuine issues of material fact for resolution by a jury" (internal quotation marks and citation omitted)).

**{13}**     Defendant acknowledges that the *Lerma II* Court abandoned any requirement that a disclosure must have a primarily public purpose but then pivots to contend that Plaintiff's communications "did not . . . have the potential to [benefit the public], since he never disclosed his communications to anyone outside the Department." Assuming that the individuals to whom Plaintiff reported, the Village administrator and the Village clerk, were not "outside the Department" as Defendant suggests, the plain text of the NMWPA unambiguously establishes that a public employee need not "*publicly* blow the whistle," contrary to Defendant's assertion. Our Legislature explicitly specified that communication to the employer suffices. Section 10-16C-3(A), in relevant part, prohibits a public employer from retaliating against a public employee who "communicates *to the public employer* . . . information about an action or failure to act that the public employee believes in good faith constitutes an unlawful or improper act." (emphasis added).

**{14}**     Defendant points to the *Lerma II* Court's quotation of the New Jersey Supreme Court's definition of "whistleblower" as "a person 'who, believing that the public interest overrides the interest of the organization that individual serves, publicly blows the whistle.'" ___-NMSC-___, ¶ 31 (quoting *Young v. Schering Corp.*, 660 A.2d 1153 (N.J. 1995)). Defendant appears to adopt a position that a whistleblower must "publicly blow[] the whistle" while subjectively believing that the public interest overrides the interest of the organization that individual serves. This Court, however, has rejected the notion that the NMWPA "protects only communications made by an employee with the intent of serving the public interest." *Lerma v. N.M. Dep't of Corrections* (*Lerma I*), 2024-NMCA-011, ¶ 31, 541 P.3d 151 (internal quotation marks omitted), *rev'd in part on other*

*grounds by Lerma II*, ___-NMSC-___. Our Supreme Court did not review or reverse this holding. *See Lerma II*, ___-NMSC-___, ¶ 1 (settling specifically "the question whether the disclosure is required to pertain to a matter of public benefit in order to qualify for protection under the NMWPA"). To that end, the *Lerma II* Court employed the New Jersey Supreme Court's definition of "whistleblower" as a tool to discern the Legislature's intent to require that a disclosure benefit the public. *Id.* ¶¶ 30-31. The *Lerma II* Court did not consider whether the NMWPA requires a whistleblower to disclose more "publicly" than to the "public employer," as Section 10-16C-3(A) states. Because cases are not authority for propositions not considered, *Richard v. Marathon Petroleum Corp.*, ___-NMCA-___, ¶ 33, ___ P.3d ____ (A-1-CA-40747, May 14, 2025), we decline to impose on this basis the additional requirement for which Defendant advocates.

**{15}**     For these reasons, we conclude that Plaintiff met the burden to establish a genuine issue of material fact about whether the communications are protected by the NMWPA.

## II.    Causation and the Affirmative Defense

**{16}**     Defendant also contended that Plaintiff did not demonstrate a genuine issue of material fact that the asserted whistleblowing caused Defendant to retaliate against him. On this point, Defendant made two discrete but related arguments to the district court. First, Defendant argued that summary judgment was warranted because "[t]here is no evidence tying Plaintiff's alleged disclosures to any adverse employment action taken against him." Second, Defendant argued that summary judgment was appropriate because "[a]ny alleged adverse employment action against Plaintiff was based upon legitimate, non[]retaliatory business reasons." The first argument relates to causation as an element of Plaintiff's NMWPA claim, *see* § 10-16C-3(A); UJI 13-2321, and the second relates to Defendant's statutory affirmative defense, *see* § 10-16C-4(B). Although Plaintiff bears the burden of proof for the causation element, *see* UJI 13-2321, and Defendant has the burden to prove the affirmative defense, *see* UJI 13-2325 NMRA, the same issues of material fact form the basis for both arguments in the present case.

**{17}**     To prevail on the NMWPA claim, Plaintiff has the burden to establish a causal connection between his communications to Defendant and the "pattern of retaliatory conduct" that he alleges Defendant took against him. The NMWPA provides that "[a] public employer shall not take any retaliatory action against a public employee *because* the public employee" takes action that is protected NMWPA activity. Section 10-16C-3 (emphasis added). UJI 13-2324 NMRA states that "engagement in protected activity is a cause of an employer's retaliatory action if the employee's protected activity was a factor that motivated, at least in part, the employer's action against the employee," and defines a "motivating factor" as "a factor that plays a role in an employer's decision to act." UJI 13-2324 goes on to explain that "[an] employee's protected activity need not be the only reason, nor the last reason, nor latest reason, for the employer's action." Thus, for summary judgment to be appropriate it must have been established that no dispute

of material fact exists regarding whether the asserted protected communications were a factor that played a role in Defendant's decision to act against Plaintiff. The parties point to the timeline of events to support their opposing positions on this point. *See Velasquez v. Regents of N. N.M. Coll.*, 2021-NMCA-007, ¶ 41, 484 P.3d 970 (holding that "[t]emporal proximity between protected conduct and adverse employment action is one factor that may support an inference of retaliatory motive" (citing *Juneau*, 2006-NMSC-002, ¶ 22)).

**{18}** The parties point to different events to establish the timing of Plaintiff's first disclosures in relation to the first instances of discipline. Defendant asserts that the lieutenant first reprimanded Plaintiff on April 2, 2018, for failing "to respond to a burglary while on duty," and that on April 26, 2018, the lieutenant authored a memorandum proposing to discipline Plaintiff for lack of productivity. We note that Defendant's timeline on appeal is different than the timeline presented in its summary judgment motion, where Defendant alleged that "Plaintiff first made his alleged 'disclosures' when he met with Village administrators on June 4, 2018." Defendant argues on appeal that "Plaintiff's first alleged disclosure [occurred on] June 1, 2018, when he communicated with [the chief] by email." But according to Plaintiff's timeline, his first protected communication occurred "[i]n the first months of 2018," when he "raised a number of concerns directly to" CPD officers "about what he believed in good faith to be serious issues of gross mismanagement involving CPD operations, liability issues, and safety issues." Plaintiff's assertion that he alerted the chief to many of his concerns before the June 4, 2018 meeting (the June meeting) is supported by the transcript from that meeting and Plaintiff's affidavit. In appellate briefing, Plaintiff contends that these communications to the chief occurred "[i]n the first months of 2018"—before the lieutenant's April disciplinary measures. In response, Defendant noted, "There is no sooner date" than June 2018 that is "established in the record for Plaintiff's alleged disclosures." We agree that the record does not establish a date for Plaintiff's reports to the chief but disagree that the record is devoid of evidence of disclosures earlier than June 2018. In the June meeting, Plaintiff told the Village administrator and the clerk that he had "many" meetings with the chief about the lieutenant's conduct, that the complaints had not been addressed, and that Plaintiff had therefore decided to "move forward with talking to other people." Based on this evidence, a reasonable jury could infer that Plaintiff's timeline showed that the April discipline came after at least some of Plaintiff's disclosures to his employer. As a result, the evidence supports a dispute of fact about timing in relation to causation.

**{19}** The parties also disagree about when Plaintiff's last protected communication to Defendant occurred. Defendant terminated Plaintiff's employment on May 24, 2019, which is five months after the last arguably protected communication to Defendant on December 18, 2018. Plaintiff asserts the last protected communication was an email (the December email) that he sent to the Village clerk outlining the "issues [he] mentioned" during the June meeting and asking about the status of any investigation that may have resulted from the communications he made during the meeting. Defendant, however, maintains that the last protected communications occurred during the June meeting because the December email "is merely a request for a status update

on his earlier 'disclosures' from June." The parties thus dispute the potential impact of the December email, which creates a genuine issue of material fact about causation and temporal proximity. *See Parker v. E.I. DuPont de Nemours & Co.*, 1995-NMCA-086, ¶ 9, 121 N.M. 120, 909 P.2d 1 ("A fact is material for the purpose of determining whether a motion for summary judgment is meritorious if it will affect the outcome of the case.").

**{20}** As this Court has noted, "Temporal proximity between protected conduct and adverse employment action is one factor that may support an inference of retaliatory motive." *Velasquez*, 2021-NMCA-007, ¶ 41. Whether retaliation is a motivating factor is a question of fact. *Lerma I*, 2024-NMCA-011, ¶ 31. Because a jury could reasonably infer from the evidence that retaliation was a motivating factor, we conclude that this material fact is disputed.

**{21}** The same dispute of material fact is a barrier to summary judgment in Defendant's favor on the Section 10-16C-4(B) affirmative defense. Defendant can only establish this affirmative defense at the summary judgment stage if there is not a genuine issue of material fact about whether retaliation was a motivating factor. *See id.* (providing for an affirmative defense if the defendant establishes that "retaliatory action was not a motivating factor"); *Lerma I*, 2024-NMCA-011, ¶ 32 ("As the statutory language makes clear, [the defendant] can only prevail on its affirmative defense at the summary judgment stage if there is no genuine dispute about whether retaliation was a motivating factor."). Because we have already concluded that there are genuine issues of material fact regarding that question, we hold that the summary judgment was not warranted based on Defendant's affirmative defense.

**CONCLUSION**

**{22}** For the reasons explained above, we reverse and remand for further proceedings.

**{23}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**