1999-NMCA-059

979 P.2d 744

**NEW MEXICO REGULATION & LICENSING DEPARTMENT, Administrative Services Div., Appellant/Cross-Appellee,**

v.

**Bernie LUJAN, Appellee/Cross-Appellant.**

**No. 19,318.**

Court of Appeals of New Mexico.

March 17, 1999.

Patricia A. Madrid, Attorney General, Katherine Zinn, Special Assistant Attorney

General, NM, Regulation & Licensing Dept., Santa Fe, for Appellant/Cross–Appellee.

Kenneth R. Wagner, Kenneth R. Wagner & Associates, P.A., Albuquerque, for Appellee/Cross–Appellant.

## OPINION

ALARID, J.

{1} This case involves an administrative appeal by the New Mexico Regulation and Licensing Department (the Department) and a cross-appeal by Bernie Lujan (Employee). The Department appeals from orders of the district court and the State Personnel Board (the SPB) determination that Employee did not receive progressive discipline prior to termination, and directing that Employee be reinstated and transferred to an agency other than the Department. Employee cross-appeals the district court's and the SPB's determination that he was an employee of the Department and not the New Mexico Real Estate Commission (NMREC). We affirm.

## FACTS

{2} Employee was dismissed from his position as Chief Investigator with the NMREC by Notice of Final Action on June 2, 1995. The Notice of Final Action stated that the grounds for Employee's dismissal included continued misconduct and unprofessional behavior including foul language, sexually charged misconduct, and outbursts of anger. Employee appealed his dismissal to the SPB.

{3} The Employee filed a motion for judgment on the pleadings concerning whether Employee was employed by the Department or NMREC and subsequently filed for summary judgment on the issue. The temporary hearing officer found that Employee was employed by the Department for purposes of the application of the State Personnel Act. After the hearing, the temporary hearing officer made detailed and specific findings of fact and conclusions of law and wrote a comprehensive report.

{4} Specifically, the temporary hearing officer found that Employee had been a "major contributor to NMREC problems[,]" but found that while Employee "was a major source of [the Department's] problems, his behavior must be seen in light of other conduct occurring at the office, all of it attributable to lack of effective management." Despite these observations, the temporary hearing officer concluded that "the record and the evidence revealed a complete absence of any attempt to progressively discipline [Employee] for his contribution to the problems with NMREC offices, or even to supervise him[.]" The temporary hearing officer concluded that the prior superintendent's lack of supervision of Employee had effectively shielded Employee from discipline. He found that when the new supervisor, Robin Otten, took charge she was made aware of Employee's behavior problems. However, the new supervisor did not make any effort to see if she could control Employee on her own, and her decision to terminate Employee was made in the absence of any evidence of progressive discipline in his personnel records.

{5} The temporary hearing officer held that the specific instances of misconduct alleged against Employee in the notice of contemplated action were of such nature that progressive discipline was required. The temporary hearing officer also held that progressive discipline was not afforded to Employee, and therefore his termination was in violation of the State Personnel Board Rules. The temporary hearing officer's ultimate conclusion was that the Notice of Final Action should be reversed and that Employee should be reinstated to his position as a chief investigator. Each party was then given the opportunity to file exceptions to the temporary hearing officer's recommended decision.

{6} The SPB adopted the temporary hearing officer's recommendation that Employee should be reinstated, but determined that he should be employed by an agency other than the Department. The Department appealed. The district court affirmed the decision and order of the SPB.

## STANDARD OF REVIEW

{7} Both issues on appeal involve a determination of whether the district court should have affirmed the SPB's decision and its adoption of the temporary hearing offi-

cer's findings of fact and conclusions of law. Our scope of review in reviewing appeals under the Personnel Act, NMSA 1978, §§ 10–9–1 to –25 (1961) (amended 1998) is identical to that of the district court. *See Gallegos v. New Mexico State Corrections Dep't,* 115 N.M. 797, 800, 858 P.2d 1276, 1279 (Ct.App.1992). Section 10–9–18(G) requires the district court to "affirm the decision of the [SPB] unless the decision is found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence; or (3) otherwise not in accordance with law." NMSA 1978, § 10–9–18(G) (1980) (amended 1998).

{8} An arbitrary and capricious action consists of conduct or a ruling that is unreasonable or does not have a rational basis. *See Perkins v. Department of Human Servs.,* 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct.App.1987). An abuse of discretion occurs when the administrative agency has not acted in a manner required by the law. *See id.* Even if another conclusion may be reached or where there is room for two opinions, the action is not arbitrary or capricious if it was made after due consideration. See id. Whether the SPB's decision was supported by substantial evidence entails considering all of the evidence, both favorable and unfavorable to the SPB's decision, and deciding whether its decision was supported by the evidence. *See id.* Last, an agency's decision is not in accordance with the law if the decision or action taken by the agency was based on an error of law. *See id.* at 656, 748 P.2d at 29. "Whether a ruling or decision of an administrative agency is 'not in accordance with law' is a question of law to be decided by the court." *Id.*

### DISCUSSION

{9} We begin our discussion with Employee's cross-appeal. We do so because the determination of this issue is a necessary step in addressing the Department's appeal. Employee asserts that he is an employee of NMREC and not the Department, and therefore the Department had no authority to terminate his employment. As the Department correctly asserts, however, Employee is employed by the Department because NMREC falls under the auspice of the Department. Stated alternatively, NMREC is a division of the Department.

{10} The Department was created in 1983 by the Legislature. *See* 1983 N.M.Laws, Ch. 297, §§ 17–29. Included in the Act creating the Department was a temporary provision that provided that "[t]he control of the professional and occupational licensing functions of the executive branch of state government may be consolidated [by the Governor] under the supervision of the regulation and licensing department upon executive order[.]" NMSA 1978, § 9–1–13 (1983). The stated purpose of this temporary provision was to consolidate the administration, operations, and services of these administrative agencies. This provision has been codified by Section 9–1–13. In response to this provision, Governor Anaya issued Executive Order number 86–10 to "streamline and maximize the efficiency of state agencies." In this order, he consolidated several professional boards, including NMREC, under the supervision of the Department. *See* Executive Order No. 86–10 (April 24, 1986).

{11} Employee argues that this is repeal by implication of one statute by another and that this practice is disfavored. *See State ex rel. Quintana v. Schnedar,* 115 N.M. 573, 575, 855 P.2d 562, 564 (1993); *Hahn v. Sorgen,* 50 N.M. 83, 89, 171 P.2d 308, 311–12 (1946). Employee asserts that should the Legislature want to place NMREC under the control of the Department, they would have to do so expressly by revoking prior statutory law and enacting new statutory law to provide such a result. We do not agree. This was a temporary order that has the same force and effect as any other law and was intended to suspend but not repeal any contrary statutory sections. *See Cunningham v. Smith,* 143 Kan. 267, 53 P.2d 870, 872 (1936); *State ex-rel. Prater v. State Bd. of Finance,* 59 N.M. 121, 124–25, 279 P.2d 1042, 1044 (1955). This Executive Order has not yet been replaced or repealed and continues today as does Section 9–1–13 and is therefore the current law. *See Baxter v. State,* 134 Ga.App. 286, 214 S.E.2d 578, 582 (1975); *Blackwell v. Commonwealth,* 36 Pa.Cmwlth.

31, 387 A.2d 506, 509 (1978). Further, the General Appropriation Act of 1998 appropriated funds to NMREC, thereby recognizing that it was a division of the Department. *See* 1998 N.M.Laws, ch. 116, § 4.

{12} Additionally, we hold that the power to control the administration of NMREC necessarily includes the hiring and firing of its employees. The Department, not NMREC, hired Employee, Employee's title falls under the Department, and Employee's hiring was approved by the superintendent of the Department. All of these factors fulfill the definition of employer found in the State Personnel Act. *See* NMSA 1978, § 10–9–3(E) (1961) (stating that " 'employer' means any authority having power to fill positions, in an agency").

{13} There is nothing about the SPB decision that is arbitrary and capricious or an abuse of discretion, not supported by substantial evidence, or not in accordance with the law. It is clear from the Executive Order that NMREC is a division of the Department and that necessarily the Department's control over NMREC includes the authority to hire and fire employees. The SPB's decision was not an irrational choice and it acted in accordance with the law as it is currently written. The evidence as presented demonstrates that the Department was the employer of Employee and controlled the details of Employee's duties. We therefore affirm the determination of the district court and SPB finding that Employee was employed by the Department.

{14} The next issue we address is whether Employee was afforded progressive discipline prior to his termination. Employee asserts that any disciplinary action should have been in writing and placed in his personnel file. He argues that because no such documentation was placed in his file prior to his termination he did not receive progressive discipline. We agree.

{15} One of the stated purposes of the State Personnel Act is that "Employees shall be retained on the basis of the adequacy of their performance and provisions shall be made for correcting inadequate performance and separating employees whose inadequate performance cannot be corrected." *State*

*Personnel Board Rules, Purpose,* page vii (January 2, 1993). According to the State Personnel Board Rules, the purpose of discipline is to correct inadequate job performance and progressive discipline should be used whenever it is appropriate. See State Personnel Board Rule 17.1(A) & (B) (March 16, 1994). Progressive discipline can range from an oral reprimand, to demotion, suspension or dismissal. *See* State Personnel Board Rule 17.1(B). Although progressive discipline is preferred, the State Personnel Board Rules acknowledge that there are instances where dismissal is appropriate prior to progressive discipline. *See id.* This Court has stated however, that dismissal should be preceded by specific directives to refrain from particular conduct. *See State ex rel. Hughes v. City of Albuquerque,* 113 N.M. 209, 215, 824 P.2d 349, 355 (Ct.App.1991).

{16} Not only do the State Personnel Board Rules address discipline, but the Department's employee handbook states that a supervisor has a duty to inform employees if their job performance is deficient. There are steps that supervisors must take in informing employees if their job performance is deficient. Those four steps are: (1) verbal warning; (2) written reprimand; (3) suspension or demotion; and (4) dismissal. For the warning to be adequate however, the employer must identify the violation involved and the consequences of the violation. *See Chicharello v. Employment Sec. Div.,* 1996–NMSC–077, ¶ 5, 122 N.M. 635, 930 P.2d 170 (1996).

{17} The Department argues that, even if progressive discipline was not followed, it still had just cause to terminate Employee's position. The Department asserts that the State Personnel Board Rules do not require progressive discipline in order for there to be just cause for dismissal. We agree. Just cause occurs when an employee engages in behavior that is inconsistent with the employee's position. *See* State Personnel Board Rules 17.3 (March 26, 1994). Just cause can include misconduct, incompetency or insubordination. *See id.*

{18} The temporary hearing officer made a conclusion of law that Employee was not afforded progressive discipline as required by the State Personnel Board Rules. The temporary hearing officer also found that there was no just cause to terminate Employee. Again, we review these conclusions to determine whether they were arbitrary, capricious or an abuse of discretion, not supported by substantial evidence, or not in accordance with the law. *See Perkins,* 106 N.M. at 654, 748 P.2d at 27; NMSA 1978, § 10–9–18(G) (1998).

{19} The temporary hearing officer in the present case took evidence and considered it in light of the law. He made numerous findings of fact and conclusions of law that were, save for two conclusions, adopted by the SPB. The temporary hearing officer correctly concluded that the State Personnel Board Rules require progressive discipline prior to dismissing an employee unless the employee is dismissed for just cause. *See* State Personnel Board Rule 17.1(B); *cf. Kazensky v. City of Merced,* 65 Cal.App.4th 44, 76 Cal.Rptr.2d 356, 374 (1998) ("We would have no difficulty finding an abuse of discretion if there were a clear City policy calling for the application of progressive discipline . . . and the City had then failed to follow that policy."). Although the temporary hearing officer made findings that Employee engaged in demeaning and disrespectful behavior, he did not find that the efforts to investigate for sexual harassment problems or to educate on sexual harassment were specifically targeted at Employee. In fact, he found that these efforts were directed to all of the employees at NMREC. Additionally, the temporary hearing officer found that Employee's "personnel file contains no evidence of serious disciplinary problems" and that there was "no evidence of progressive discipline." Also, there were no efforts by the new superintendent to inform Employee that his job performance was deficient or what the consequences of his behavior would be. *See Chicharello,* 122 N.M. 635, 930 P.2d 170, 1996–NMSC–077, ¶ 7; *State ex rel. Hughes,* 113 N.M. at 215, 824 P.2d at 355; Regulation and Licensing Department Employee Handbook, *Discipline Policy.*

Further, the temporary hearing officer determined that Employee's misconduct while disrespectful and demeaning, did not rise to the level that would support dismissal for just cause.

{20} The State Personnel Board Rules and employee handbook has attributes of an employee contract. *See McTigue v. Personnel Bd. of Chicago,* 299 Ill.App.3d 579, 233 Ill.Dec. 492, 701 N.E.2d 135, 143 (1998); *Garcia v. Middle Rio Grande Conservancy Dist.,* 121 N.M. 728, 731, 918 P.2d 7, 10 (1996); *Forrester v. Parker,* 93 N.M. 781, 782, 606 P.2d 191, 192 (1980). A personnel manual results in an implied contract if it controls the employer-employee relationship and an employee can reasonably expect his or her employer to conform to the manual's procedures. *See Garcia,* 121 N.M. at 731, 918 P.2d at 10. Under the circumstances here, the State Personnel Board Rules and the employee handbook control the employer-employee relationship. *See Forrester,* 93 N.M. at 782, 606 P.2d at 192. Employee was entitled to expect that the Department would conform to the termination procedures outlined prior to dismissing him. *See id.* Employee had a right to rely on the progressive discipline policy provided by the State Personnel Board Rules and the procedures outlined in the employee handbook.

{21} Although the Department was entitled to find Employee's actions reprehensible, the Department must nonetheless follow appropriate procedures in imposing disciplinary actions. It is clear from the record that there were no reprimands or admonishments placed in Employee's personnel file that would constitute progressive discipline, nor was any action taken specifically to address any problems that the Department was having with Employee. Based on the record, we affirm the ruling of the district court, we hold that the temporary hearing officer's decision was supported by both the law and the facts, and we conclude that the temporary hearing officer and SPB properly found that Employee was not afforded progressive discipline,

and there was not just cause for Employee's dismissal.

## *CONCLUSION*

{22} Based on the foregoing discussion we affirm the district court which, in turn, affirmed the action of the SPB. The temporary hearing officer and the SPB properly found that Employee was employed by the Department and that the Department did not afford Employee progressive discipline prior to his dismissal.

{23} **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.