This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36993

LISA JOHNSON, Mother and Next
Friend of Minor, ENRIQUE RIOS,

      Appellant-Petitioner,

v.

NEW MEXICO HUMAN SERVICES
DEPARTMENT,

      Appellee-Respondent.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
David K. Thomson, District Judge

Disability Rights of New Mexico
Jason C. Gordon
Albuquerque, NM

for Petitioner

John R. Emery, Deputy General Counsel
Constance G. Tatham, Assistant General Counsel
Santa Fe, NM

for Respondent

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Petitioner Lisa Johnson appeals the New Mexico Human Services Department's (the Department) partial denial of her son's Mi Via waiver and budget request and the district court's affirmance thereof. Petitioner raises several issues on appeal. For the reasons discussed below, we affirm.

**BACKGROUND**

**The Mi Via Program**

**{2}** Mi Via is New Mexico's self-directed Home and Community-Based Services (HCBS) waiver program.[1] *See* 8.314.6.7(I) NMAC (3/1/2016);[2] 8.314.6.7(N) NMAC. Mi Via, which is administered through a partnership between the Department and the New Mexico Department of Health, offers a community-based alternative to institutional care for "eligible recipients who are living with developmental disabilities (DD), or medically fragile (MF) conditions," 8.314.6.9(A) NMAC, and seeks to provide eligible recipients with "greater choice, direction and control over services and supports in a self-directed environment." 8.314.6.15 NMAC.

**{3}** Although Mi Via provides eligible recipients with a role in selecting goods and services, the waiver excludes goods and services "that a household without a person with a disability would be expected to pay for[.]" 8.314.6.16 NMAC. Non-covered services include "any goods or services that are considered primarily recreational and diversional in nature[.]" 8.314.6.16(G) NMAC. The program will, however, cover "equipment, supplies or fees and memberships, not otherwise provided through [M]i [V]ia, the medicaid state plan, or medicare" if the related goods meet the program's budgetary requirements listed in 8.314.6.17(D) NMAC,[3] and "directly relate to the member's qualifying condition or disability." 8.314.6.15(H)(4) NMAC.

**{4}** In order to be covered under Mi Via, services, supports, and goods must: "(1) directly address the eligible recipient's qualifying condition or disability; (2) meet the eligible recipient's clinical, functional, medical or habilitative needs; (3) be designed and delivered to advance the desired outcomes in the eligible recipient's service and support plan; and (4) support the eligible recipient to remain in the community and reduce the risk of institutionalization." 8.314.6.15(A)(1)-(4) NMAC.

**{5}** An eligible recipient may request disability-related services, supports, and goods by submitting a proposed service and support plan (SSP) and budget request. *See* 8.314.6.17 NMAC. A proposed SSP sets out the eligible recipient's request for services and goods, including "the projected amount, the frequency and the duration of the services[,]" as well as existing supports available to the recipient that will complement the services and goods requested from Mi Via. 8.314.6.7(R) NMAC. The Third-Party Assessor (TPA) or the Department's Medical Assistance Division's (MAD) designee is responsible for approving the SSP and authorizing the annual budget. 8.314.6.10(B) NMAC ("The TPA . . . is responsible for . . . approving the SSP and authorizing an eligible recipient's annual budget in accordance with 8.314.6 NMAC and the [M]i [V]ia service standards."). The Department is required to provide written notice of the specific regulations that support its action when it denies a claimant's request for benefits or

---

1States may choose to waive Medicaid rules related to institutional care and develop home and community-based service programs. *See generally* 42 U.S.C. § 1396n(c) (2018).
2Except where indicated, all references to regulations regarding the Mi Via program are to the 2016 regulations.
3Regulation 8.314.6.17(D) of the Administrative Code provides that a proposed annual budget request may be considered for approval if, among other listed requirements, the budget request is within the eligible recipient's individual budgetary allotment (IBA). 8.314.6.17(D)(1) NMAC.

services under a Medicaid program. 42 C.F.R. 431.206 (2019); 42 C.F.R. 431.210(c) (2019).

**{6}** Additionally, as a condition of the HCBS waiver program, the Department—as New Mexico's Medicaid agency—must maintain a hearing system consistent with the federal requirements laid out in 42 C.F.R. § 431.205 (2019). *See* 42 C.F.R. § 431.200(a) (2019) (explaining that federal grants to states for medical assistance programs under the Social Security Act "requires that a [s]tate [Medicaid] plan provide an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly"); NMSA 1978, § 27-3-3 (1991) (providing for opportunity for fair hearing when assistance or services are denied, modified, or terminated under any provision of the Social Security Act); 8.352.2.11 NMAC (requiring that the Department provide the opportunity for a fair hearing as dictated by 42 C.F.R. § 431.220(a) (2019) and Section 27-3-3).

**{7}** Under the Mi Via program, an applicant may challenge the TPA's initial denial of a requested good or service and budget request by requesting a "fair hearing" before an administrative law judge (ALJ). *See* 8.314.6.20(A)(4) NMAC (identifying the denial of services as one of the circumstances in which MAD must grant an opportunity for an administrative hearing under 42 C.F.R. § 431.220(a)(1)-(2), Section 27-3-3, and 8.352.2 NMAC).

**{8}** The Department has its own regulations governing Mi Via administrative hearings. *See generally* 8.352.2 NMAC. For example, the Department must adhere to the processes described in 8.352.2 NMAC when a fair hearing is requested. *See* 8.314.6.20(B) NMAC. At the administrative hearing, the burden is on MAD to "prove through the preponderance of the evidence that an adverse action against a claimant is correct." 8.352.2.14(A)(1) NMAC. The ALJ's recommendation may be based only on the record of the HSD administrative hearing, *see* 8.352.2.17(A) NMAC, and the recommendation "shall specify the reasons for [the ALJ's] conclusions, identif[y] the supporting evidence, reference[] the pertinent federal and state statutes, regulations, and NMAC rules, and respond[] to the arguments of the parties within his or her written report." 8.352.2.17(B)(1) NMAC. The Department's final decision on a SSP and budget request is made by the MAD Director or designee upon review of the administrative hearing record and the ALJ's recommendation. *See* 8.352.2.17 NMAC.

**Enrique's Mi Via Waiver Request and Partial Denial**

**{9}** Petitioner's son, Enrique Rios (Enrique), suffers from Rapid Onset Dystonia Parkinsonism (RODP), a rare genetic disorder. RODP manifests for Enrique as muscle spasms—"forceful, sustained twisting movements and postures that affect his entire body." These muscle spasms can make breathing and swallowing difficult for Enrique, and can leave him "physically and psychologically drain[ed]."

**{10}** In September 2016 Enrique applied for disability-related services and goods under the Mi Via waiver program. Relevant to this appeal, Enrique's $21,640.88 budget

request included $400 to purchase annual movie passes and $850 to purchase Popejoy Hall season tickets for himself and his caregiver. In support of these two requests, Enrique asserted that he uses "the sensory experience [from movies] as a form of relaxation and stimulation" and that movies not only reduce his spasms, but also allow him to safely participate in his community. Similarly, he asserted that live shows at Popejoy Hall provide him safe access to his community, help him relax, and reduce the number of spasms he experiences.

{11}   On September 29, 2016, and again on October 11, 2016, Qualis Health—the Department's TPA—asked Petitioner to clarify how movies and Popejoy Hall shows "explicitly address[] a clinical, functional, medical, or habilitative need and how [they] directly relate to [Enrique's] qualifying condition." In both requests for information, the TPA quoted 8.314.6.15(H)(4)(a)-(f) NMAC verbatim and further informed Petitioner that under 8.314.6.16(G) NMAC "[n]on-covered services, include, but are not limited to the following: [A]ny goods or services that are considered primarily recreational or diversional in nature."

{12}   Petitioner responded to the TPA's request for additional information by letter in which she asserted, in part:

> Popejoy shows provide wonderful, live shows that have beautiful, engaging music. Enrique is always mesmerized by their performances. As he is enjoying the shows, his spasms decrease significantly, which proves to be another excellent alternative to increasing his medications. . . . Popejoy is a great way to get Enrique out in the community. . . . He has been enjoying Popejoy shows for many years and the waiver program has been paying for it.

Petitioner similarly asserted that as Enrique enjoys movies, his spasms decrease, which in turn, increase his independence by allowing him to drive his wheelchair with his feet and to operate the joystick on his communication device.

{13}   The TPA denied Enrique's request for movie passes and Popejoy Hall season tickets (collectively, show tickets) explaining that, while a letter from Petitioner had been provided, the request was denied because "[show tickets] would be considered recreational and diversional in nature[,]" and "the documentation doesn't explicitly address the activit[ies] as habilitative, functional, clinical or medical and doesn't directly relate to the member's qualifying condition." With respect to the show tickets request, the TPA's partial decision letter included the following citation:

> Non-covered services include, but are not limited to the following:
>
> G.      [A]ny goods or services that are considered primarily recreational or diversional in nature. 8.314.6.16 [(G)] NMAC.

**Administrative Fair Hearing**

**{14}** Petitioner requested an administrative fair hearing, which was held on January 30, 2017. During the fair hearing, the Department argued that it denied Enrique's request for show tickets because they were not covered goods and services under the Mi Via program per 8.314.6.16(G) NMAC. Dr. Paul Kovnat, the Assistant Medical Director for the TPA, testified that he reviewed Enrique's SSP and budget request and the Department's record concerning Enrique. According to Dr. Kovnat, show tickets are recreational and diversional activities, and are not generally recognized as an alternative intervention for the treatment of RODP. In his opinion, show tickets are not habilitative nor are they medically necessary to prevent Enrique's institutionalization because nothing in the record presented sufficient medical information to indicate that movies and Popejoy Hall shows "are anything other than, primarily recreational or diversional in nature."

**{15}** As part of his review, Dr. Kovnat analyzed a series of letters from Enrique's physicians submitted to the Department in support of Enrique's SSP request. In Dr. Kovnat's opinion, Dr. Pirio-Richardson's January 9, 2017 letter, did not provide sufficient medical information of the type typically relied upon by physicians to support a finding that the requested show tickets were habilitative. Likewise, Dr. Kovnat found the January 23, 2017 letter, from Dr. Kristine Parke and letters from Dr. Edward Kleiner, including one letter dated April 28, 2016, and one undated letter, to be indeterminate as to movies and Popejoy Hall shows being an accepted therapy for Petitioner's qualifying condition. Dr. Kovnat has never recommended shows as therapy nor is he familiar with any physician who has. Because shows are not an accepted therapy, Dr. Kovnat testified that he was unable to support Enrique's SSP request for movie passes and Popejoy Hall tickets.

**{16}** Petitioner also testified at the administrative hearing. Petitioner expressed that Enrique chose the Mi Via waiver because it "pays for many things that a typical waiver doesn't pay for." Petitioner testified to the importance of reducing Enrique's muscle spasms without the use of additional medication because the side effects from the medication can worsen his muscle spasms. Going to movies and shows at Popejoy Hall, in Petitioner's opinion, is an effective way to manage the frequency and severity of his muscle spasms without increased medication.

**{17}** The ALJ admitted a series of letters from Enrique's physicians and caretakers in support of his show tickets request including those addressed by Dr. Kovnat. Dr. Pirio-Richardson, Enrique's neurologist, explained in her letter that while shows "may be considered recreational for many people, they are not for Enrique[,]" and "are exactly the kind of alternative interventions that allow Enrique relief from the symptoms of his condition and minimize his reliance on medications." Similarly, Dr. Parke wrote that shows "are not recreational or diversional for Enrique; they are medically necessary because they reduce his stress and anxiety and therefore reduce his spasms." Finally, Dr. Kleiner, Enrique's former pediatrician, explained that movies "not only give[ Enrique] relaxation during the film itself but seem[] to have some beneficial effects for some time after."

**{18}**  In his written recommendation, the ALJ quoted the language in, and cited to, both 8.314.6.15 NMAC ("Service Descriptions and Coverage Criteria") and 8.314.6.16 NMAC ("Non-Covered Services"). The ALJ summarized the relevant testimony and evidence as follows:

> Both parties discussed at length the phrase "primarily recreational or diversional" (8.314.6.16 [(G)] NMAC). Dr. Kovnat testified that, in his medical opinion, attending shows is not a generally accepted medical therapy, and the letters from [Enrique]'s various providers did not alter his opinion that these are primarily recreational. Dr. Parke acknowledged that these are not "standard medical treatment" (see Exhibit B), and Dr. Pirio-Richardson acknowledged they are considered . . . ["]recreational for many people" (see Exhibit A). Both of these providers, however, make the distinction that, for [Enrique], they are not just entertainment. They argue that such activities are effective alternate medical treatments for spasms related to his qualifying condition. Therefore, the undersigned must look to the regulations related to Mi Via covered goods and services.

**{19}**  The ALJ turned to the Mi Via regulations regarding covered goods and services and recommended that MAD find in favor of the Department, explaining his recommendation as follows:

> All of the criteria listed in 8.314.6.15 NMAC must be met for a good or service to meet the Mi Via coverage criteria. Movies or theatre performances do not meet all of the coverage criteria as neither are designed or delivered to advance the desired outcomes of [Enrique's] SSP (8.314.6.15 A[(3)] NMAC). They are designed and delivered as entertainment, which is primarily a recreational or diversional activity.

**{20}**  The MAD Director reviewed the ALJ's recommendation, considered the record of the fair hearing, and adopted and incorporated the ALJ's findings of fact and conclusions of law. The MAD Director explained her decision as follows:

> The combination of the testimony and documentary evidence presented at the [f]air [h]earing were sufficient for the Department to meet its evidentiary burden, as set forth in 8.352.2.14 NMAC. For these reasons I uphold the Department's decision to deny [Enrique]'s request for movie passes and Popejoy Hall tickets pursuant to 8.314.6.15[(A)] and 8.314.6.16[(G)] NMAC.

**{21}**  Petitioner appealed MAD's decision to the district court. On appeal, Petitioner raised four issues: (1) the TPA's denial of Enrique's request was improper and not in accordance with the law; (2) the Department's decision to deny Enrique's show tickets was arbitrary and capricious, not supported by evidence, and not in accordance with the law; (3) the Department's decision violated due process when it based its decision on a regulation not cited in the TPA's partial decision letter; and (4) the Department violated

the Americans with Disabilities Act (ADA) when it denied Enrique a reasonable accommodation. The district court determined "that viewed in light of the entire record, the MAD Director's decision is not arbitrary and capricious, is supported by substantial evidence, and is in accordance with applicable law." The district court further found that the Department did not violate Enrique's due process rights nor did it violate the ADA. The district court affirmed the Department's denial of Enrique's show tickets request.

**Petitioner's Current Appeal**

**{22}**     Petitioner filed a petition for a writ of certiorari to this Court, which we granted.[4] *See* Rule 12-505 NMRA. Petitioner raises four issues which we address in the following order: (1) whether the Department violated Enrique's due process rights; (2) whether the Department violated the ADA by not providing Enrique a reasonable accommodation; (3) whether the district court applied the correct standard of review; and (4) whether the district court erred in finding that the Department's decision was in accordance with applicable law, was supported by substantial evidence, and was not arbitrary and capricious.

**DISCUSSION**

**{23}**     We resolve administrative appeals by employing "the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. Our review is limited to ascertaining "whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law." *Id.* We review the entire record, and in evaluating the reasonableness of an action, we may take into account an agency's expertise. *See Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 17, 125 N.M. 401, 962 P.2d 1236. When reviewing for arbitrary and capricious action, we do not substitute our own judgment for that of the agency. *See Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 17, 137 N.M. 161, 108 P.3d 1019. However, we review questions of due process under a de novo standard of review. *Id.* ¶ 19.

**I.     Due Process**

**{24}**     Our Federal and State Constitutions require the government to follow certain procedures before it deprives an individual of an interest in life, liberty, or property that is protected by the Constitution. *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"); N.M. Const. art. II, § 18 ("No person shall be deprived of life, liberty or property without due

---

[4]We note that certain Mi Via regulations were amended effective November 1, 2018. Regulation 8.314.6.16(G) of the Administrative Code now reads as follows: "[A]ny goods or services that are considered recreational or diversional in nature as defined in Subparagraph (f) of Paragraph (4) of Subsection (H) of 8.314.6.15 NMAC including but not limited to tickets for movies, theatrical and musical performances, sporting events; zoos, or museums." 8.314.6.16(G) NMAC (11/1/2018).

process of law[.]"). Therefore, "[a]dministrative hearings that affect a property or liberty interest must comply with due process." *Archuleta*, 2005-NMSC-006, ¶ 31.

**{25}** Petitioner claims the Department violated Enrique's federal and state due process rights by basing its final decision on a regulation not cited by the TPA in its partial decision letter nor discussed by either party during his fair hearing. Specifically, Petitioner argues that "[a]s New Mexico's Medicaid agency, [the Department] is required to maintain a hearing system 'that meets the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970)' " and that the decision to deny his budget request for show tickets, based on a regulation that had not been cited in the TPA's partial decision letter, violated its own regulations.

**{26}** In *Goldberg*, the United States Supreme Court held that before a state can terminate a recipient's welfare benefits, due process requires that the recipient be afforded an adequate hearing. 397 U.S. at 261. In that context, the Supreme Court announced that due process requires: (1) "timely and adequate notice detailing the reasons for a proposed termination"; (2) "an effective opportunity for the recipient to defend by confronting any adverse witnesses and by presenting his arguments and evidence orally"; (3) retained counsel, if desired; (4) an impartial decision-maker; (5) a decision resting solely on the legal rules and evidence addressed at the hearing; and (6) a statement of the reasons for the decision and the evidence relied upon. *Id*. at 267-71. The Department responds that it complied with Enrique's due process rights and that *Goldberg* does not require the specificity of notice Petitioner claims must be provided in Medicaid fair hearings.

**{27}** Although neither party substantively addressed *Mathews v. Eldridge*, 424 U.S. 319 (1976) in its briefing, we analyze Petitioner's due process claim under the *Mathews* test because it is the analytical framework for analyzing due process issues in New Mexico state courts. *See N.M. Dep't of Workforce Sols. v. Garduño*, 2016-NMSC-002, ¶ 11, 363 P.3d 1176. The *Mathews* test involves consideration of three factors: (1) "the private interest that will be affected by the [government] action;" (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interests, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. These factors provide a "useful framework for determining the amount of process appropriate to protect a . . . property interest as a matter of constitutional right." *Franco v. Carlsbad Mun. Schs.*, 2001-NMCA-042, ¶ 11, 130 N.M. 543, 28 P.3d 531.

## A. Constitutionally Protected Interest

**{28}** Under *Mathews*, we first consider the private property interest affected by government action. *Garduño*, 2016-NMSC-002, ¶ 12. "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of . . . the private interest that has been

affected by governmental action." *Id.* (alteration, internal quotation marks, and citation omitted); *see Mills v. N.M. State Bd. of Psych.t Exam'rs*, 1997-NMSC-028, ¶ 15, 123 N.M. 421, 941 P.2d 502 ("The threshold question in evaluating a due process challenge is whether there is a deprivation of liberty or property."). Protected property interests are those to which an individual has a claim of entitlement. *Garduño*, 2016-NMSC-002, ¶ 13.

**{29}** Citing *JL v. New Mexico Department of Health*, 165 F. Supp. 3d 996 (D. N.M. 2015), Petitioner asserts that "New Mexico courts recognize that individuals who may qualify for Medicaid benefits have constitutionally protected property interests in receiving those Medicaid benefits." In *JL*, the court held that developmentally disabled adults committed to state custody had protected property interest in their continued commitment under the 1953 New Mexico Developmental Disability Code. *Id.* at 1012-14. Petitioner offers no analysis explaining why *JL* supports her position that Enrique had a property interest in receipt of his 2016 SSP and budget request for show tickets.

**{30}** The Department, on the other hand, does not address Petitioner's reliance on *JL* or whether Enrique had a property interest in receipt of his budget request for show tickets. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").

**{31}** Because the Department does not challenge this threshold question and because the governing statutes and regulations provide for a fair hearing,[5] we will assume without deciding that Enrique had a property interest in receipt of his show tickets budget request. *See In re Doe*, 1982-NMSC-099, ¶ 3, 98 N.M. 540, 650 P.2d 824 (explaining that "courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories" (alteration, internal quotation marks, and citation omitted)).

### B.    Erroneous Procedural Deprivation and Additional or Substitute Procedural Safeguards

**{32}** "The second *Mathews* test [factor] requires examining both the risk that the private interest will be erroneously deprived with the procedures used and any probable value of additional or substitute procedural safeguards." *Garduño*, 2016-NMSC-002, ¶ 20 (citing *Mathews*, 424 U.S. at 335). "In examining the potential risk of erroneous deprivation, we look to the procedures as a whole." *Garduño*, 2016-NMSC-002, ¶ 21. "It is well settled that the fundamental requirements of due process in an administrative

---

[5]*See* 42 C.F.R. § 431.200(a); NMSA 1978, § 27-3-3 (1991); 8.352.2.11 NMAC. We further note that other courts have determined Medicaid benefits to be a protected property interest for purposes of due process. *See, e.g.*, *Guggenburger v. Minnesota.*, 198 F. Supp. 3d 973, 1019-20 (D. Minn. 2016) (recognizing that "[b]ecause a property interest can arise from a 'claim of entitlement' to government benefits, eligible individuals applying for such benefits may validly assert a Due Process claim").

context are reasonable notice and opportunity to be heard and present any claim or defense." *Rayellen Res., Inc. v. N.M. Cultural Props. Rev. Comm.*, 2014-NMSC-006, ¶ 20, 319 P.3d 639 (alteration, internal quotation marks, and citation omitted). "Due process does not require the same form of notice in all contexts; instead, the notice should be appropriate to the nature of the case." *Id.* ¶ 19 (internal quotation marks and citation omitted). "Put simply, we must determine whether the notice was 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Garduño*, 2016-NMSC-002, ¶ 24 (quoting *Mullane v. Hanover Cent. Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

**{33}** Petitioner argues that Enrique was denied due process because the Department based its decision to deny his show tickets request, at least in part, on a regulation that had not been cited in the TPA's partial decision letter. We understand Petitioner's argument to be two-fold: (1) the Department did not meet the notice requirements set forth in the Medicaid regulations governing the HCBS waiver program; and (2) the Department did not follow its own regulations governing administrative hearings.

**{34}** Here, there is no dispute that the Department's notice, in the form of the TPA's partial decision letter, did not include reference to 8.314.6.15(A)(3) NMAC as an additional basis for the denial of Enrique's budget request for show tickets and for that reason, we agree that the Department did not fully comply with the notice requirements of 42 C.F.R. § 431.210(c). Nor was the Mi Via regulation, 8.314.6.15(A)(3) NMAC, explicitly discussed during the fair hearing. To the extent the MAD Director's final decision was based on 8.314.6.15(A)(3) NMAC, we agree that the Department did not strictly comply with its regulation governing the parameters of ALJ recommendations. *See* 8.352.2.17 NMAC (requiring ALJ's recommendation to be based on the record of the HSD administrative hearing).

**{35}** We are not persuaded, however, that the notice in this case rose to the level of a due process violation. "In New Mexico, the distinguishing factor used to determine whether there was or was not a violation of due process rights depends on whether the defective notice deprived the claimant of the ability to participate in the proceeding." *Garduño*, 2016-NMSC-002, ¶ 27. Enrique received notice that his budget request for show tickets was denied because the Department considered show tickets to be non-covered services and that non-covered services include, but are not limited to "any goods or services that are considered primarily recreational or diversional in nature." There is also no dispute that he received notice of his right to a fair hearing. During the fair hearing, Enrique was represented by counsel, and introduced letters from his treating physicians and caretakers who discussed the ameliorating effect that shows have on his muscle spasms in an attempt to demonstrate that show tickets were a covered service under the Mi Via program. Enrique's attorney also confronted and cross-examined Dr. Kovnat regarding his opinion that show tickets were a non-covered service. Therefore, we conclude that the notice in this case provided Enrique with the ability to request, and participate in, the fair hearing process. *Cf. Larsen v. Bd. of Educ. of Farmington Mun. Schs.*, 2010-NMCA-093, ¶ 19, 148 N.M. 920, 242 P.3d 487

(rejecting claim that difference between language in notice and arbitrator's decision resulted in due process violation).

**{36}** In *Larsen*, a certified high school teacher (Larsen) argued that he received inadequate notice of the charges supporting his termination, in violation of due process, because the independent arbiter upheld his termination based on allegations that were different than those included in the notice. *Id.* ¶ 10. Recognizing that although the School and the independent arbiter characterized Larsen's problematic conduct differently, we held that there was no due process violation because Larsen had been apprised "of the charges so as to afford him the opportunity to present his evidence contravening the charges" and had "full opportunity to present his case." *Id.* ¶¶ 15-19.

**{37}** As in *Larsen*, the notice in this case met the requirements of due process. The TPA's partial denial letter informed Enrique that his budget request for show tickets was being denied because show tickets were considered non-covered services under the Mi Via waiver program, and the Department provided him an opportunity to present evidence showing that they fell within the Mi Via list of covered services.

**{38}** We next address the possible value of additional or substitute procedural safeguards. *Garduño*, 2016-NMSC-002, ¶ 29. "Inherent in this question is whether the outcome would have been different if the Department had provided the additional process [Petitioner] requests." *Garduño*, 2016-NMSC-002, ¶ 29. Petitioner claims that prior notice of 8.314.6.15(A)(3) NMAC as a basis for the denial of the show ticket budget request would have given Enrique "the opportunity to prepare his argument to address the issue the ALJ regarded as important, specifically regarding the interpretation of 'design and delivery.' " Petitioner has not, however, suggested what evidence or argument Enrique would have presented to convince the Department that movies and PopeJoy shows are not primarily entertainment or designed and delivered as entertainment. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."); *State ex rel. Children, Youth & Families Dep't v. Christopher B.*, 2014-NMCA-016, ¶ 7, 316 P.3d 918 (explaining that courts require a claimant "to demonstrate that there is a reasonable likelihood that the outcome *might* have been different had the denied procedure been afforded" (alteration, internal quotation marks, and citation omitted)). Without any showing that the Department's final decision might have been different had the TPA's partial decision letter included a reference to 8.314.6.15(A)(3) NMAC, we are not persuaded that there was probable value to Petitioner's proffered additional procedural protection. *See Garduño*, 2016-NMSC-002, ¶ 29.

## C. Department's Interest

**{39}** "The third factor of the *Mathews* test is 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *Garduño*, 2016-NMSC-002, ¶ 38 (quoting *Mathews*, 424 U.S. at 335). Consideration of the "public interest" under this factor includes "the administrative burden and other societal costs associated with

providing the proposed additional procedural safeguards." *Id.* (internal quotation marks and citation omitted).

**{40}** Petitioner's proposed additional procedure would have been to receive notice of each regulation the MAD Director would ultimately rely on in affirming the denial of Enrique's show ticket budget request. However, due process does not require ideal or perfect notice, but only that which "is reasonably calculated to be effective without imposing unrealistically heavy burdens on the party charged with the duty of notification." *Maso v. N.M.Tax'n & Revenue Dep't*, 2004-NMSC-028, ¶ 10, 136 N.M. 161, 96 P.3d 286 (internal quotation marks and citation omitted). To require the TPA to specifically cite to the baseline requirements for a service or good to be covered by Mi Via under 8.314.6.15 NMAC, without demonstrating prejudice from the failure to do so, would be an unnecessary burden that due process does not require.

**{41}** Based on the foregoing, we conclude that the risk of erroneous deprivation under the Department's procedures are low and we affirm the district court's ruling that the Department complied with Enrique's due process rights.

## II. The Americans with Disabilities Act

**{42}** Petitioner argues that the Department's decision violated the Americans with Disability Act (ADA) by failing to provide Enrique a reasonable accommodation in the implementation of the Mi Via program's policies and procedures. Specifically, Petitioner argues that the Department discriminated against Enrique "by only agreeing to meet the needs of participants with conditions that are amenable to standard 'approved therapy approaches.' " The Department responds that it lacks statutory authority to adjudicate claims under the ADA and directs this Court to *Law v. New Mexico Human Services Department*, 2019-NMCA-066, ¶ 23, 451 P.3d 91, *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37786, Aug. 1, 2019). In *Law*, this Court held that the Department lacks statutory authority to adjudicate claims under the ADA. *Id.* ¶ 23.

**{43}** Petitioner did not address *Law* in her brief in chief. In her reply brief, however, she asks this Court to revisit this issue, arguing that *Law* (1) "places [an] undue burden on program participants to either forgo their claims entirely or look outside an already unduly complicated Medicaid fair hearing process for a remedy"; and (2) encourages the Department to ignore the ADA. Aside from the unsubstantiated assertions identified above, Plaintiffs offer no argument demonstrating why we should reconsider our holding in *Law*. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305 ("Particular questions must be considered before overturning precedent: 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification." (internal quotation marks and citation omitted)). We therefore

decline to reconsider our holding in *Law* and proceed no further with Petitioner's ADA violation claim.

### III.    The District Court Applied the Correct Standard of Review

**{44}**    Petitioner claims the district court failed to properly apply the de novo standard of review to the legal questions presented in her appeal. Specifically, Petitioner argues that "[n]othing in the [o]rder issued . . . states that a de novo review was conducted" and that the order failed to "provide any analysis of the legal issued raised[.]" In response, the Department argues that (1) "there is no requirement that a district court judge use the exact words, 'de novo review,' in his written agency review decision"; and (2) the order reflects that the district court conducted a de novo review. We agree.

**{45}**    Petitioner does not cite to any legal authority in support of her apparent position that the district court must explicitly include the phrase "de novo" in a written decision from an administrative appeal. *See In re Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We have long held that to present an issue on appeal for review, an appellant must submit an argument *and authority* as required by rule."). Absent authority to the contrary, we decline to create a requirement that the phrase "de novo" must be included when a district court serves in its appellate capacity under Rule 1-074 NMRA.

**{46}**    Additionally, our review of the district court's order reveals that the district court "reviewed the pleadings and all matters of record and [was] otherwise fully advised" in reaching its decision to affirm the Department's denial of Enrique's show ticket request. The district court referenced the correct standard of review it was to apply under Rule 1-074(R), and made specific findings of fact and law to support its denial of each of the issues Petitioner raised in her appeal. Contrary to Petitioner's claim, we see no evidence that the district court applied an incorrect standard of review to any of the legal issues addressed in its order.

### IV.    Petitioner's Remaining Issues

**{47}**    Petitioner claims that the Department's decision to deny Enrique's show tickets request was arbitrary and capricious, not supported by substantial evidence, and not in accordance with law. For the reasons that follow, we disagree with each of these claims.

### A.    Arbitrary and Capricious.

**{48}**    Petitioner claims that the Department's decision was arbitrary and capricious contending that the decision: (1) failed to adequately consider "unchallenged" evidence of the therapeutic benefit Enrique derives from shows; (2) runs counter to the "undisputed" evidence that Enrique does not use the shows for recreational or diversional purposes; and (3) was based on a strained interpretation of a regulation that was not previously relied on and not addressed at the administrative hearing.

**{49}** "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rayellen*, 2014-NMSC-006, ¶ 16 (internal quotation marks and citation omitted). "In viewing the whole record, and in evaluating the reasonableness of an action, we may take into account the agency's expertise." *Archuleta*, 2005-NMSC-006, ¶ 17. "Where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though another conclusion might have been reached." *Perkins v. Dep't of Human Servs.*, 1987-NMCA-148, ¶ 20, 106 N.M. 651, 748 P.2d 24.

**{50}** Measured by the above standard, the Department's decision was not arbitrary or capricious. Although Enrique presented evidence of the therapeutic benefit he experiences from watching movies and PopeJoy shows, as the district court found, the Department's decision was not based upon on a conclusion that Enrique failed to derive a therapeutic benefit from the shows. Instead, the decision was based upon a finding that the show tickets were a non-covered service because they were primarily recreational and diversional and did not meet the Mi Via "designed and delivered" requirement for covered services.

**{51}** The record reveals that during the hearing, Dr. Kovnat testified that movies and shows are recreational and diversional activities that are not generally recognized as an alternative intervention for the treatment of RODP. In addition, Petitioner herself described the shows as providing "beautiful, engaging music" that Enrique enjoys. Based on the evidence in the record, it was reasonable for the ALJ and the MAD Director to conclude that the shows were *primarily* recreational and diversional for Enrique, regardless of whether Enrique experienced any secondary therapeutic effects. Nor do we conclude that it was unreasonable or irrational for the ALJ and MAD Director to consider and apply the general requirements for covered service or goods under the Mi Via program in reviewing and denying Enrique's show tickets budget request.

## B.    Substantial Evidence

**{52}** Petitioner contends that the Department's final decision was not supported by substantial evidence because "[t]he only evidence concerning [Enrique's] individualized use of the [show tickets] was offered by [Enrique] and his care team." In its review the district court concluded that the Department met its burden of proof during the hearing and we agree.

**{53}** "When reviewing findings of fact made by an administrative agency we apply a whole record standard of review." *Regents*, 1998-NMSC-020, ¶ 17 (internal quotation marks and citation omitted). "This means that we look not only at the evidence that is favorable, but also evidence that [is] unfavorable to the agency's determination." *Id.* (internal quotation marks and citation omitted). "We do not reweigh the evidence but decide, on balance, whether there was substantial evidence to support the agency's decision." *Regents of the Univ. of Cal. v. N.M. Water Quality Control Comm'n*, 2004-

NMCA-073, ¶ 29, 136 N.M. 45, 94 P.3d 788. Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." *Id.*

**{54}** Reviewing the whole record before us, we agree with the district court that substantial evidence supports the Department's decision in this case. Dr. Kovnat testified that show tickets are recreational and diversional activities and are not habilitative or medically necessary to prevent Enrique's institutionalization. He further testified that the letters from Enrique's treating physician's lacked sufficient information typically relied upon by physicians to support a finding that movies and Popejoy Hall shows were, in fact, habilitative. Finally he testified that show tickets were not an accepted therapy. *See Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 11, 135 N.M. 30, 84 P.3d 78 (stating that "we may only evaluate whether the record supports the result reached, not whether a different result could have been reached").

## C.     In Accordance with Law

**{55}** Finally, Petitioner claims that the final decision by the Department was not in accordance with law because it "analyzed the delivery of the service to the general public" as opposed to Enrique and his specific medical needs. Petitioner claims that the Department's interpretation of "design and delivery" under 8.314.6.15(A)(3) NMAC is error because it "obliterate[s] any meaning of self-direction" in the Mi Via program. The Department responds that although the program is participant-centered, the rules and regulations do not provide "carte blanche approval for every good or service requested."

**{56}** "[A]n agency's decision is not in accordance with the law if the decision or action taken by the agency was based on an error of law." *N.M. Regul. & Licensing Dep't v. Lujan*, 1999-NMCA-059, ¶ 8, 127 N.M. 233, 979 P.2d 744. "We review de novo whether a ruling by an administrative agency is in accordance with the law." *Archuleta*, 2005-NMSC-006, ¶ 18. While we are "not bound by the agency's ruling on a matter of law, we nevertheless may take into account the nature of the agency and scope of its power to determine fundamental policy." *Id.*

**{57}** Although the Mi Via waiver program provides recipients with a role in selecting goods and services pursuant to 8.314.6.16 NMAC, we agree with the Department that the selection of goods and services is not without limitation. *See id.* (excluding goods and services "that a household without a person with a disability would be expected to pay for"); 8.314.6.16(G) NMAC (excluding goods or services that are primarily recreational and diversional in nature). In addition, covered services, supports, and goods must: "(1) directly address the eligible recipient's qualifying condition or disability; (2) meet the eligible recipient's clinical, functional, medical or habilitative needs; (3) be designed and delivered to advance the desired outcomes in the eligible recipient's service and support plan; and (4) support the eligible recipient to remain in the community and reduce the risk of institutionalization." 8.314.6.15(A)(1)-(4) NMAC.

**{58}** "Self-direction" is defined by the Department's Mi Via regulations as "[t]he process applied to the service delivery system wherein the eligible recipient identifies,

accesses and manages the services (*among the MAD approved* [*M*]*i* [*V*]*ia waiver services and goods*) that meet his or her assessed therapeutic, rehabilitative, habilitative, health or safety needs to support the eligible recipient to remain in his or her community." 8.314.6.7(Q) NMAC (emphasis added). The very definition of "self-direction" does not support Petitioner's claim that the concept of self-direction should override the general requirements a service or good must meet in order to be covered by Mi Via. Petitioner's citation to the federal regulation governing person-centered planning at 42 C.F.R. § 441.301(c)(2) (2019) is also unpersuasive as we do not read it to stand for the proposition that states cannot place reasonable parameters on the goods and services that may be covered under HCBS waiver programs. The Department's general requirements for a good or service to be covered by Mi Via under 8.314.6.15(A) NMAC is in accordance with law.

**CONCLUSION**

**{59}** Based on the foregoing, we affirm the Department's denial of Enrique's SSP request for show tickets and the district court's affirmance thereof.

**{60} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**